CATHERINE ROACH *vs.* CITY OF SOMERVILLE.

Middlesex.    March 7. — April 6, 1881.    COLT, ENDICOTT & SOULE, JJ., absent.

A notice to a city of the time, place and cause of a personal injury, given in a casual conversation with a police officer of the city, by the attending physician of the injured person, but not at his request nor on his behalf, is not sufficient to satisfy the requirements of the St. of 1877, c. 234.

TORT for personal injuries occasioned to the plaintiff, on January 26, 1879, by a defect in Somerville Avenue in the defendant city. Answer, a general denial. Trial in the Superior Court, without a jury, before *Pitman*, J., who allowed a bill of exceptions in substance as follows:

Upon the question whether a sufficient notice was given to the defendant, under the St. of 1877, c. 234, the evidence was substantially as follows:

John F. Couch, a physician, testified: "I attended the plaintiff the evening of the accident. On the morning of the next day I called at the station. I think two policemen were there. I called the attention of one of them to the fact that I had been called to attend the plaintiff the evening before. I stated that she had fallen on the sidewalk on Somerville Avenue, which was said to be icy, and that she had fractured her arm. In a

general way, I made some remarks as to the reason of giving this notice; that very often suits were brought by individuals against other individuals and corporations, and notice was given to the interested parties when it was too late for them to satisfy themselves of the condition of affairs at the time of the accident, or when the cause of the suit occurred. I put the name, age, accident and place where it occurred in writing for him to hand over to the reporter of the local paper. The matter of notice was optional with myself. I was not asked to give it. I gave it of my own will. I think I suggested to the family that I should give notice of when and where it occurred, for the general reason that the city might know when it occurred, and might have an opportunity to examine the premises before any change in the condition of things." On cross-examination, the witness testified: "I have no recollection that the plaintiff, or any one in her presence, said she should hold the city responsible. There was some general conversation to the effect that the city ought to pay my bill. No one asked me to notify the city."

John H. Roach, a son of the plaintiff, testified: "I was present when the doctor first visited my mother after the accident. I said to the doctor that the city ought to be held responsible for his bills, and that he would have to look to the city for pay. We had talked about suing the city for damages. I and the doctor thought the sidewalk was in a bad condition and the city was liable for it. I said he, or somebody, ought to notify the chief of police. He said he would call there when he went round in the morning. All the talk was in my mother's presence." On cross-examination, he testified: "I had the impression then that the city was liable, and that some one should give that notice. But I did not know that it was necessary in order to sue the city."

The plaintiff testified: "The doctor said that he would notify the city in the morning about the breaking of my arm. So he wrote it down and put it into his pocket." On cross-examination, the witness testified: "When I told the doctor that if he could get his fee out of the city I should be satisfied, I did not say I should be satisfied for myself. I thought I should get a little for myself for breaking my arm. I never thought of

the city when I sent in the note. I took no notice of the conversation between my son and the doctor."

Upon being recalled, Dr. Couch testified that it was likely that he did tell the plaintiff that he was going to notify the city.

Melville C. Parkhurst, the chief of police of the defendant city, testified as follows : " Dr. Couch came to the station the morning after the accident and stated to me that he had set an arm for the plaintiff on the night before ; that she fell on the sidewalk on Somerville Avenue, between Ford's and Cahill's. That was all he said as to the accident. At another time I asked Dr. Couch if he was asked by the woman to give the notice, or whether he gave it on his own responsibility. He said it was on his own responsibility. I did not notify any other official that I recollect of."

Upon this evidence, the plaintiff asked the judge to rule that the notice was sufficient to satisfy the requirements of the statute. But the judge declined so to rule ; ruled that " the notice itself should show affirmatively, either by a form of words or by the circumstances under which it is given, that it is intended by the party giving it as a notice for the purpose of fixing their right of action ; " and, upon the evidence, was of opinion that the plaintiff had not shown such a notice ; and accordingly found for the defendant. The plaintiff alleged exceptions.

*M. F. Farrell*, for the plaintiff.

*S. C. Darling*, for the defendant.

MORTON, J. This case is governed by *Kenady* v. *Lawrence*, 128 Mass. 318. The information given by Dr. Couch to the police officer on the morning after the accident to the plaintiff was not such notice as is required by the St. of 1877, *c.* 234. The communication of Dr. Couch did not purport to be a notice under the statute. It was not intended as a notice to fix the plaintiff's right of action, and could not have been so understood by the officer. It was not made on behalf of the plaintiff. It was a mere casual conversation, which did not call upon the officer to notify his superior officers that a claim was made upon the city, and cannot affect the rights of the city any more than if the same information had come to him from any other source.

As there was no evidence to show that the plaintiff ever gave, or intended to give, a notice to the city, the presiding justice of the Superior Court could not do otherwise than to find for the defendant.                    *Exceptions overruled.*